UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HARTFORD INSURANCE CO. OF
THE MIDWEST,

      Plaintiff,

v.                                                Case No. 2:07-cv-785
                                                Honorable Patrick J. Duggan[*]

STEVEN G. KOEPPEL, and
YESLOW & KOEPPEL,

      Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS

Plaintiff Hartford Insurance Company of the Midwest ("Hartford") filed this diversity action against Defendants seeking damages for legal malpractice (Count I), equitable subrogation (Count II), legal malpractice as third-party beneficiary (Count III), and breach of contract as third-party beneficiary (Count IV).[1] Hartford's lawsuit arises from its retention of Defendant Steven Koeppel ("Koeppel"), a member of the Florida Bar and a shareholder of Defendant Yeslow & Koeppel, to handle a demand letter from an attorney representing an individual injured in an accident with one of Hartford's insureds. Presently before the Court is Defendants' motion to dismiss pursuant to Rules 12(b)(1)

---

[*]United States District Court Judge for the Eastern District of Michigan sitting by assignment.

[1]Hartford indicates that it pleads its equitable abrogation, legal malpractice as third-party beneficiary, and breach of contract as third-party beneficiary claims as alternative theories in the event the Court concludes that it was not Defendant Steven Koeppel's client and cannot bring a legal malpractice action against Defendants. (Doc. 27 at 2.)

and (6) of the Federal Rules of Civil Procedure. The motion has been fully briefed.[2] On April 8, 2009, this Court held a motion hearing.

## I.     Applicable Standards

Defendants move to dismiss Hartford's complaint pursuant to Rule 12(b)(1), contending that Hartford does not have standing to brings its claims against Defendants and therefore the Court lacks subject matter jurisdiction. Defendants also move to dismiss Hartford's complaint pursuant to Rule 12(b)(6), arguing that Hartford fails to state a claim upon which relief may be granted.

The Eleventh Circuit Court of Appeals has provided the following standard for deciding Rule 12(b)(1) motions:

> Attacks on subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) come in two forms. "Facial attacks" on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. . . . "Factual attacks," on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.

*Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (internal quotation marks and citations omitted). Defendants assert a facial attack in this case. Thus Hartford "is

---

[2]Both parties have filed notices of supplemental authority. (Docs. 57 and 58.) Hartford has filed a motion to strike Defendants' filing, contending that it was submitted in violation of Middle District of Florida Local Rule 3.01. (Doc. 63.) Because the authority cited in Defendants' notice of supplemental authority does not persuade the Court to rule differently on their motion to dismiss, it denies as moot Hartford's motion to strike the pleading.

2

afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion . . ." *Id.* at 1529 (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)).

When reviewing a defendant's Rule 12(b)(6) motion, a court must accept all of the allegations in the plaintiff's complaint as true and construe the facts in a light most favorable to the plaintiff. *GJR Invs. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998). Pursuant to Federal Rule of Civil Procedure 8(a), the plaintiff need only provide "a short and plain statement of the grounds upon which the court's jurisdiction depends," "a short and plain statement showing that the pleader is entitled to relief," and "a demand for judgment for the relief the pleader seeks." As the United States Supreme Court has recently provided, however, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007).

## II. Factual Allegations and Procedural Background

On March 2, 2005, while operating his automobile, Ronald Davis ("Davis") collided with a motorcycle driven by Gaspare Oliveri, III ("Oliveri"), in Lee County, Florida. (Compl. ¶ 7.) Oliveri suffered significant injuries in the accident. (*Id.* ¶ 8.) At the time of the accident, Davis and his wife, Elizabeth Sturgis ("Sturgis") were insured under an automobile liability policy issued by Hartford. (*Id.* ¶ 9.) The policy had a liability limit of $100,000 applicable to the accident. (*Id.*)

Oliveri subsequently filed a claim against Davis and Sturgis (hereafter collectively

3

the "Insureds"). After being contacted about the accident, Hartford assessed that Oliveri's claim would greatly exceed the policy limit. (*Id.* ¶ 10.) On March 9, 2005, Hartford tendered the policy's limit by delivering a check to Oliveri along with a proposed release of his claim against the Insureds. (*Id.*) Oliveri did not negotiate the $100,000 check or execute Hartford's proposed release. (*Id.* ¶ 12.)

Hartford thereafter informed the Insureds that Oliveri's damages exceeded the policy limit and thus they were exposed to potential liability for a judgment in excess of the policy limit. (*Id.* ¶ 13.) Hartford therefore advised the Insureds to retain personal legal counsel. (*Id.*) On or about April 1, 2005, the Insureds retained attorney Pablo Lense to represent them in defense of Oliveri's claim. (*Id.* ¶ 14.)

Hartford thereafter continued to pursue a settlement of Oliveri's claim within the policy limit with Oliveri's attorney. (*Id.* ¶ 18.) Hartford shared information it received regarding Oliveri with the attorney retained by the Insureds. (*Id.* ¶¶ 17, 19.)

On August 4, 2005, Oliveri's attorney issued a time sensitive policy limit demand letter to Hartford, offering to settle Oliveri's claim for *inter alia* a check for the $100,000 policy limit and a "mutual notarized general release." (*Id.* ¶ 22.) Hartford thereafter sent a copy of the demand letter to the Insureds' personal attorney. (*Id.* ¶ 23.) On August 25, 2005, Hartford retained Koeppel "to properly accept the . . . [demand letter], including drafting and delivering the 'mutual notarized general release.'" (*Id.* ¶ 24.) Hartford thereafter informed the Insureds' personal attorney of its retention of Koeppel to effectuate a settlement of Oliveri's claim in accordance with the demand letter. (*Id.* ¶ 27.)

In its complaint, Hartford maintains that Koeppel negligently responded to the demand letter, resulting in Oliveri pursuing a lawsuit against the Insureds in Florida state court. Sometime before February 12, 2007– when the state court matter was scheduled for trial– Hartford settled the case for an amount substantially in excess of the policy limit, thereby protecting the Insureds from a potential excess judgment. (Compl. ¶ 36.) On November 30, 2007, Hartford filed this legal malpractice action against Defendants.

## III.  Defendants' Arguments

Defendants argue that Hartford lacks standing to assert its legal malpractice claim against them because there was no attorney-client relationship between Hartford and Koeppel. Defendants argue that Koeppel's attorney-client relationship was with the Insureds, alone. Defendants further argue that, pursuant to Florida law, an attorney's liability for negligence arising out of his or her professional duties is limited to clients with whom the attorney shares privity of contract.

Defendants acknowledge that the Florida courts recognize a limited exception to the privity requirement in the area of will drafting because the client's intent to benefit a third party in that context is "readily apparent." (Defs.' Mot. at 10 (citing *Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner*, 612 So.2d 1378, 1379 (Fla. 1993).) Defendants, however, contend that the exception does not extend to this case because Hartford has not alleged any facts to suggest that the Insureds intended to benefit the insurance company in "their" contract with Koeppel. Defendants therefore argue that Hartford also lacks standing to pursue its third-party beneficiary legal malpractice and

5

breach of contract claims.³

Lastly, Defendants argue that Hartford fails to state a claim upon which relief may be granted in its claim for equitable subrogation. Defendants argue that the claim is not viable under Florida law because the Florida courts prohibit the subrogation of legal malpractice claims.

**IV. Analysis**

As an initial matter, the Court believes that the factual premise of Defendants' motion– i.e. that Hartford retained Koeppel only to represent the Insureds– is not supported by the allegations in Hartford's complaint. The facts Hartford alleges– which this Court must presume true for purposes of deciding Defendants' motion– indicate that the attorney-client relationship was between Koeppel and Hartford, not the Insureds. For example, Hartford alleges that Oliveri's attorney "issued a time-sensitive Policy limit demand letter to HARTFORD, offering to settle the Oliveri claim . . ." and that "HARTFORD decided to accept the [demand letter and] retained STEVEN KOEPPEL . . . to properly accept [the demand letter] . . ." (Compl. ¶¶ 22, 24.) Hartford further alleges that at least four months before Hartford retained Koeppel, it advised the Insureds to retain their own attorney to represent their interests and the Insureds in fact hired an attorney. (*Id.* ¶¶ 13, 14.)

---

³Defendants move for dismissal pursuant to Rule 12(b)(6) for the same reasons that they argue Hartford lacks standing: i.e., that absent an attorney-client relationship between Hartford and Koeppel or evidence that Hartford was a third-party beneficiary of the contract for Koeppel's services, Hartford cannot establish that Koeppel owed it a professional duty of care.

Based on these facts, it would appear that Hartford was in privity of contract with Koeppel and there would be no question as to whether Koeppel could be held liable to Hartford for the alleged negligence in the performance of his professional duties. Hartford therefore would have standing to pursue its legal malpractice claim. The Court nevertheless will address whether Hartford has standing if Defendants' factual assumption is correct– i.e. that Hartford retained Koeppel to represent the Insureds, only.

Where federal subject matter jurisdiction is based on diversity, the district court must apply the substantive law of the jurisdiction in which it sits. *Shapiro v. Assoc. Int'l Ins. Co.*, 899 F.2d 1116, 1118 (11th Cir. 1990) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938)). Therefore, Florida substantive law governs the disposition of this case and the Court first must turn to Florida Supreme Court precedent. *Towne Realty, Inc. v. Safeco Ins. Co. of Am.*, 854 F.2d 1264, 1269 n.5 (11th Cir. 1988). If the state supreme court has not decided the relevant issue(s), decisions of the intermediate Florida appellate courts control absent persuasive indication that the state's highest court would rule otherwise. *See Blanchard v. State Farm Mut. Auto. Ins. Co.*, 903 F.2d 1398, 1399 (11th Cir. 1990) (citations omitted). If there are no state decisions on point, this Court "may make an educated guess as to what the Florida courts would decide if this case were presented to them." *Smigiel v. Aetna Cas. and Sur. Co.*, 785 F.2d 922, 925 (11 Cir. 1986) (citation omitted).

Neither the Florida Supreme Court nor the state's appellate courts have expressly addressed whether an insurer can bring a legal malpractice or breach of contract claim

7

against an attorney hired to represent its insured.[4]  The Florida Supreme Court has held that an attorney's liability for negligence is limited to clients with whom the attorney shares privity of contract or a plaintiff who was an intended third-party beneficiary of the attorney-client relationship.  *Espinosa*, 612 So.2d at 1379-80.  Yet the Court has not decided whether privity of contract exists between an insurer and the attorney the insurer retained to represent its insured or whether the insurer is an intended third-party beneficiary of the relationship between the attorney and the insured.  The majority of jurisdictions to decide the issue, however, have concluded that the insurer is in privity of contract with the attorney hired to represent insured individuals or is a third-party beneficiary of the relationship between the attorney and the insured.

The District Court for the Eastern District of Virginia summarized the majority and minority views with respect to this issue in *General Security Ins. Co. v. Jordan, Coyne & Savits LLP*, 357 F. Supp. 2d 951 (E.D. Va. 2005).  As the court provided: "In most jurisdictions, the retaining insurer may sue the law firm directly as its client."  *Id*. at 956.  The court noted, however, that "most of the reported cases involving such suits offer no analysis of the insurer's relationship with the law firm."  *Id*. (citing *Freemont Indem. Co. v. Carey, Dwyer, Eckhart, Mason & Spring, P.A.*, 271 F.3d 1272 (Florida law); *Reliance Nat'l Indem. Co. v. Jennings*, 189 F.3d 689 (8th Cir. 1999) (Arkansas law); *Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455 (7th Cir. 1996) (Indiana law); *Nw. Nat'l Ins. Co.

---

[4]As discussed *infra*, the Florida Supreme Court possibly has answered the question by implication.

8

*v. Osborne*, 573 F. Supp. 1045 (E.D. Ky. 1983); *Smiley v. Manchester Ins. & Indem. Co.*, 375 N.E.2d 118 (Ill. 1978)).

In those decisions where the courts provide an analysis, several "reflect the view that a 'tripartite relationship' exists among the insurer, insured, and counsel, with both insurer and insured as co-clients of the firm in the absence of a conflict of interest." *Gen. Sec. Ins. Co.*, 357 F. Supp. 2d at 956 (citing *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1330-31 (9th Cir. 1995); *Spratley v. State Farm Mut. Auto. Ins. Co.*, 78 P.2d 603, 607 (Utah 2003); *Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, 79 Cal.App.4th 114, 93 Cal.Rptr.2d 534, 542-47 (Cal. Ct. App. 2000); *Pine Island Farmers Coop v. Erstad & Riemer, P.A.*, 649 N.W.2d 444, 452 (Minn. 2002)). The following additional jurisdictions have concluded that an insurer has a direct attorney-client relationship with the attorney it retained to represent its insured. *See, e.g., State and County Mut. Fire. Ins. Co. v. Young*, 490 F. Supp. 2d 741 (N.D. W. Va. 2007); *Paradigm Ins. Co. v. Langerman Law Offices, P.A.*, 2 P.3d 663 (Ariz. Ct. App. 1999); *Arrowood Indem. Co. v. Gibson & Behman, P.C.*, No. 08-Civ-6227 (S.D.N.Y. Dec. 17, 2008) (citing *Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*, No. 00-Civ-9212, 2002 WL 31729693, at *3 (S.D.N.Y. Dec. 5, 2002); *Goldenberg v. Am. Home Assurance Co.*, 80 A.D.2d 409 (1st Dept. 1981)). Some courts follow the Restatement and "recognize an additional or substitute cause of action by the insurer as a non-client beneficiary of the firm's legal services." *Gen. Sec. Ins. Co.*, 357 F. Supp. 2d at 956 (citing *Paradigm Ins. Co.*, 24 P.3d 593, 602 (Ariz. 2001); Restatement (Third) of the Law

9

Governing Lawyers § 51 cmt. g (2000)).

In *General Security Insurance*, the district court identified only two jurisdictions that preclude a direct legal malpractice liability claim by an insurer against the attorney retained to represent an insured: Michigan and Texas. 357 F. Supp. 2d at 956 (citing *Atlanta Int'l Ins. Co. v. Bell*, 438 Mich. 512, 475 N.W.2d 294, 297 (1991); *Safeway Managing Gen. Agency, Inc. v. Clark & Bamble*, 985 S.W.2d 166, 168 (Tex. App. 1998). In support of their motion, Defendants cite these cases and *Lavanant v. General Accident Insurance Co.*, 561 N.Y.S.2d 164 (N.Y. App. Div. 1990). This Court does not believe that the Florida courts would follow the minority view represented in these decisions.

First, there are public policy reasons for allowing an insurer to pursue a legal malpractice claim against the attorney it retained to represent an insured. As the Michigan Supreme Court reasoned in *Bell*:[5]

> . . . liability insurance policies typically include provisions that both obligate the insurer to provide the insured with a defense and entitle the insurer to control the defense . . .; the insurer has both a "duty" and a "right" in regard to the defense of the insured. . . . It has been appropriately recognized that defense counsel occupies a fiduciary relationship to the insured, as well as to the insurance company . . . and implicitly, if not explicitly, represents to the insured the ability to exercise professional competence and skill in conducting the insured's defense. Furthermore, because the insurance company, not the client, is required to

---

[5]Although the Michigan Supreme Court held that an insurer cannot bring a *direct* malpractice action against an attorney selected to represent its insured, based on this reasoning the Court held that an insurer should be able to seek damages suffered as a result of an attorney's malpractice on a theory of equitable subrogation.

10

> satisfy a judgment arriving from a defense counsel's malpractice, the client has no real incentive to sue defense counsel.

438 Mich. at 519, 475 N.W.2d at 297 (internal quotation marks omitted). As the District Court for the Eastern District of Virginia further reasoned in *General Security Insurance*, because "the insurer rarely has any incentive to bring a claim for malpractice against the retained firm . . . [t]he failure to recognize a cause of action by the insurer . . . serves the interests of no one except the entity that committed the malpractice." 357 F. Supp. 2d at 957. The court continued:

> Permitting the insurer to sue the firm . . . comports more readily with the understanding among both lawyers and insureds that "lawyer's services are ordinarily intended to benefit both the insurer and the insured when their interests coincide." *Paradigm*, 24 P.3d at 603. Accordingly, despite the fact that "the tripartite relationship between insured, insurer, and defense counsel contains rife possibility of conflict," *see Bell*, 475 N.W.2d at 297, nearly all courts have concluded that the harms-benefits calculus weighs in favor of recognizing an insurer's legal malpractice claim against the lawyer or law firm it retains to represent an insured.

*Id*.

Further supporting the conclusion that the Florida courts would recognize an insurer's legal malpractice claim against the attorney it retains to represent its insured is the Florida Court of Appeals' interpretation of the Florida Bar rules as allowing the same attorney to ethically represent, at the same time, both the insured and insurer. *See Progressive Express Ins. Co. v. Scoma*, 975 So.2d 461, 466 (Fla. Ct. App. 2007) (citing Rule 4-1.7(e) of the Rules Regulating the Florida Bar and concluding that "the same

attorney may often ethically represent both the insured and the insurer" provided their interests are not adverse.) Notably, Hartford specifically alleges in its complaint that its interests and the interests of the Insureds "were aligned" and that "[a]t all times relevant to the claims asserted in this action, the interests of [it] and its Insureds in settling the Oliveri Claim within the limit of the Policy were the same." (Compl. ¶¶ 26(h), 37.)

Moreover, the Florida courts have recognized an exception to the strict privity requirement for legal malpractice claims in other contexts, such as in the area of will drafting. Espinosa, 612 So.2d 1378. Some of the reasons for allowing the intended beneficiary of a will to pursue a legal malpractice claim against the lawyer who drafted the will applies to an insurer's claim against the attorney retained to represent its insured. As the Michigan Supreme Court and the District Court for the Eastern District of Virginia recognized, like the beneficiary of a will, an insurer is a readily apparent intended beneficiary of the services provided by the attorney retained to represent an insured. Further, in both the will and insurance contexts, the client is either unable or lacks an incentive to sue the attorney for malpractice. Thus, in both contexts, not allowing the third-party to pursue a legal malpractice claim "serves the interests of no one except the entity that committed the malpractice." *Gen. Sec. Ins. Co.*, 357 F. Supp. 2d at 957. For these reasons, this Court guesses that the Florida courts would extend the strict privity exception and recognize an insurer's legal malpractice claim against an attorney retained to represent its insured.

Finally, the Florida Supreme Court's decision in *Fremont Indemnity Co. v. Carey,*

*Dwyer, Eckhart, Mason & Spring, P.A.*, 796 So.2d 504 (Fla. 2001), leads this Court to believe that the Florida courts would recognize an insurer's legal malpractice claim against the attorney retained to represent its insured. In *Fremont Indemnity Co.*, the Florida Supreme Court answered a question certified to it by the Eleventh Circuit Court of Appeals regarding when the statute of limitations began to run in a case where an insurer sued a law firm for legal malpractice, breach of contract, and breach of fiduciary duties arising from the firm's handling of the defense of claims against the insurer's insured. *Id*. Answering the question, the Florida Supreme Court never suggested that the insurer could not pursue its claims against the firm, despite the Eleventh Circuit's indication that its phrasing of the certified question "was not intended to limit the Supreme Court in considering the issue presented or the manner in which it gives its answer." 197 F.3d 1053, 1058 (11th Cir. 1999). This Court presumes that the state court would have indicated somewhere in its opinion that the insurer lacked standing to pursue its claims against the attorney if it were inclined to follow the minority position. *See Polk County v. Sofka*, 702 So.2d 1243, 1254 (Fla. 1997) (quoting *West 132 Feet v. City of Orlando*, 80 Fla. 233, 239, 86 So. 197, 198-99 (1920) ("[C]ourts are bound to take notice of the limits of their authority and if want of jurisdiction appears at any stage of the proceedings, original or appellate, the court should notice the defect and enter an appropriate order.")

Therefore, this Court "guesses" that the Florida Supreme Court would embrace the majority view and recognize an attorney-client relationship between an insurer and the

lawyer or law firm it retained to represent an insured or find that the insurer is an intended third-party beneficiary of the relationship between the attorney or law firm and the insured. Accordingly, this Court concludes that Hartford has standing to pursue its legal malpractice and breach of contract claims against Defendants. Similarly, the Court concludes that a duty of care ran from Koeppel to Hartford and therefore Hartford does not fail to state a claim upon which relief may be granted, as Defendants argue.

With respect to Hartford's equitable subrogation claim, the Florida Court of Appeals has ruled that such a claim is not available to an insurer suing its insured's attorney for legal malpractice. *Nat'l Union Fire Ins. v. Salter*, 717 So.2d 141 (Fla. Ct. App. 1998). The facts of *Salter* clearly are distinguishable from the present matter and, as Hartford points out, the Supreme Court of Florida has retreated to some extent from the holding in that case. *See Cowan Liebowitz & Latman P.C. v. Kaplan*, 902 So.2d 755 (Fla. 2005). Nevertheless, because this Court concludes that Hartford can pursue its other causes of action against Defendants, it finds it unnecessary to "guess" whether the Florida courts would recognize an equitable subrogation claim in the circumstances of the present matter.

Accordingly,

**IT IS ORDERED**, that Defendants' motion to dismiss is **DENIED**;

**IT IS FURTHER ORDERED**, that Hartford's motion to strike Defendants' Notice of Filing Supplemental Authority is **DENIED AS MOOT**.

DATE: May 5, 2009          s/PATRICK J. DUGGAN
                           UNITED STATES DISTRICT JUDGE

Copies to:
Donna M. Greenspan, Esq.
Craig E. Stewart, Esq.
Gary A. Grasso, Esq.
Adam R. Bowers, Esq.
Michael Corso, Esq.